UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MJG MANAGEMENT ASSOCIATES INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 12-11414-FDS |
| NHIC CORP. and SAFEGUARD SERVICES, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS
AND MOTION FOR INJUNCTIVE RELIEF**

**SAYLOR, J.**

This is a payment dispute between a home health agency that participates in the Medicare program and two Medicare contractors. Plaintiff MJG Management Associates, Inc., is a home health agency providing services under the Medicare Act. Defendants NHIC Corp. and Safeguard Services, LLC are Medicare contractors.[1] On February 6, 2012, Safeguard notified MJG that it would be suspending Medicare payments to it based on information that MJG had engaged in fraud. MJG has sued for injunctive relief and more than $3.6 million in damages.

Defendants have moved to dismiss the complaint on two grounds. First, defendants contend that the Court does not have subject-matter jurisdiction because plaintiff has not exhausted its administrative remedies. Second, defendants contend that the complaint fails to state a claim upon which relief can be granted because Medicare contractors are immune from

---

[1] The agency responsible for administering the Medicare program, the Centers for Medicare and Medicaid Services, is not named as a defendant in this case. However, the United States asserts that CMS is the real party in interest, and is therefore representing both NHIC and Safeguard.

tort liability for acts arising out of the performance of their official duties. For the reasons set forth below, the motion to dismiss will be granted.

## I. Background

### A. Regulatory Background

Medicare is a federal program, established by the Medicare Act, that is designed to provide health insurance coverage to seniors and certain disabled individuals. 42 U.S.C. §§ 1395 *et seq*. Home health care services are covered under both Parts A and B of Medicare. 42 U.S.C. §§ 1395d(a)(3) and 1395k(a)(2)(A). Those services are available only to beneficiaries who meet certain conditions set forth in the relevant statutes and regulations. Providers of services to qualified beneficiaries can receive reimbursement from the program. To receive payment, a provider must enter into an agreement with the Secretary of Health and Human Services, and must comply with various statutory and regulatory requirements. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 6 (2000).

The Department of Health and Human Services administers the Medicare program, and has delegated that function to the Center for Medicare and Medicaid Services ("CMS"). *Citadel Healthcare Servs. v. Sebelius*, 2010 U.S. Dist. LEXIS 129960, at *5 (N.D. Tex. Dec. 8, 2010). By statute, CMS is authorized to enter into contracts with other entities to perform certain administrative functions. In particular, CMS has the authority to contract with Medicare Administrative Contractors to handle responsibilities involving payment, provider services, and services related to individual benefits. 42 U.S.C. §1395kk-1(a)(1), (a)(4). CMS also has the authority to contract with entities—called "Program Safeguard Contractors"—to preserve the integrity of Medicare by performing tasks such as reviewing the activities of providers, auditing

cost reports, and making determinations as to whether payment should or should not be made. 42 U.S.C. §1395ddd(a), (b)(1)-(4).

Payments to a provider may be suspended if CMS or a CMS-authorized Medicare contractor possesses reliable information of overpayment, incorrect payment, or fraud. 42 C.F.R. § 405.371(a)(1)-(2). The preamble to the regulations governing suspension of provider payments states that "the purpose of suspending payment is to verify whether, and how much, payment was actually due the provider for past claims and to ensure that, if a provider or supplier was overpaid, sufficient funds are available to recover the overpayments. These actions are clearly necessary to protect the Trust Funds from loss." 61 Fed. Reg. 63740, 63742-43 (Dec. 2, 1996).

A suspension is a temporary action. It is typically limited to 180 days, although it may be extended if the carrier, the Office of the Inspector General, or a law enforcement agency is unable to complete an investigation in that time. 42 C.F.R. § 405.372(d)(1). In cases of suspected fraud, CMS must determine, in consultation with the Office of the Inspector General (and the Department of Justice, as appropriate), whether to impose the suspension, and whether to provide prior notice of the suspension. 42 C.F.R. § 405.372(a)(4)(I). Where prior notice is not required, CMS or the Medicare contractor must give the provider an opportunity to submit a rebuttal statement indicating why the suspension should be removed. 42 C.F.R. § 405.372(b)(2). If the provider responds, CMS or the contractor must consider the contents of the rebuttal statement within 15 days of its receipt to determine whether the facts justify the suspension. 42 C.F.R. § 405.375(a). The Medicare contractor must then send written notice to the provider of the decision by CMS on whether to continue the suspension. 42 C.F.R. § 405.375(b).

The decision to suspend benefits is not a final determination under 42 U.S.C. § 405(h), and thus is not appealable. *See, e.g., Midwest Family Clinic, Inc. v. Shalala*, 998 F. Supp. 763, 767 (E.D. Mich. 1998); 42 C.F.R. 405.375(c).[2] The suspension "may culminate in an appealable determination . . . if the claims are subsequently denied," 61 Fed. Reg. 63740, 63743 (Dec. 2, 1996), or if the provider is subsequently excluded from the Medicare program. *See, e.g., Clarinda Home Health v. Shalala*, 100 F.3d 526, 530 (8th Cir. 1996).[3]

### B.  Factual Background

Unless otherwise specified, all facts are set forth as stated in the complaint.

MJG Management Associates, Inc., is a Medicare-certified provider of home health services. Over the past seven years, MJG has worked with approximately 1,000 patients. (Compl. ¶ 8). MJG provides services according to a plan of care established by a physician, and later submits bills for reimbursement. (Compl. ¶¶ 11-12). According to the complaint, it has submitted approximately $3.6 million in bills for services that have not been paid. (Compl. ¶ 14).

Defendants NHIC Corp. and Safeguard Services, LLC are both Medicare contractors, responsible for various administrative functions delegated by CMS. NHIC functions as a Medicare Administrative Contractor, and Safeguard functions as a Program Safeguard Contractor.

---

[2] The statutory provision, 42 U.S.C. § 405(h), was made applicable to the Medicare Act by 42 U.S.C. § 1395ii. That section provides that "[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or government agency except" as set forth in 42 U.S.C. § 405(g). Section 405(g) provides for judicial review only after a plaintiff exhausts its administrative remedies.

[3] Pursuant to the procedures established by statute and regulation, an appeal of that determination would first proceed to an administrative hearing before being eligible to be heard in a federal district court. *See Midwest Family*, 998 F. Supp at 767*; see also* 42 U.S.C. § 1395ff(b)(1) and (b)(2)(B); 42 U.S.C. § 405(g).

At some point between 2006 and 2011, defendants became suspicious about payments being requested by MJG.  On November 30, 2011, federal agents obtained a warrant to search MJG's offices.  (Compl. ¶ 24).[4]  On December 6, federal agents executed the warrant and seized records, hard drives, and other items from MJG's business address.  (Compl. ¶ 26).  On the same date, officials also seized records from the home of Michael Galatis.  (Compl. ¶ 27).[5]  Officials have subsequently served additional administrative subpoenas on MJG.  (Compl. ¶ 28).

In early February 2012, SafeGuard sent a letter to MJG indicating that it had made a determination that payments to MJG would be suspended because of a credible allegation of fraudulent conduct.  (Compl. ¶ 17).  MJG was given an opportunity to, and did, respond to that letter.  Following the temporary suspension of payments, nearly all of MJG's requests for payments were ultimately permanently denied.  (Compl. ¶¶ 46, 52).  Nothing in the record indicates that MJG has made any effort to institute an administrative appeal of that determination.

The complaint alleges that, at the time payments were suspended, CMS had not made any independent determination that payments should be suspended.  The complaint also alleges that Safeguard's letter of suspension did not identify any particular instance of misconduct, making the allegations impossible to refute.  Accordingly, MJG contends that the suspension of payments was fraudulent and in violation of 42 C.F.R. 405.372(a)(4).

---

[4] The complaint is not clear about the relationship between "At Home VNA," the entity apparently named in the warrant, and MJG.  However, because MJG does not appear to claim that the two are unrelated, and does not appear to question that the warrant properly covered MJG's premises and records, the Court will assume for purposes of this motion that At Home VNA and MJG are either the same or related business entities.

[5] The complaint is not clear as to who Mr. Galatis is and what his relationship is to this case.  Because his identity is not relevant to the determination of this motion, the Court will assume he is an employee or corporate officer of MJG.

### C. Procedural Background

Plaintiff filed a complaint in the present action on August 1, 2012. On September 26, plaintiff also filed a motion for injunctive relief. Among other things, plaintiff asks the Court to direct NHIC to issue payment in the amount of $3.6 million, or in the alternative, to identify the fraudulent activity that justifies withholding payment. Plaintiff also seeks recovery of all confiscated files and punitive damages.

## II. Standard of Review

### A. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1).

Federal courts are courts of limited jurisdiction. They possess only those powers granted by either the Constitution or statute, and cannot adjudicate claims absent such power. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, the existence of subject-matter jurisdiction is never presumed. *Fafel v. DiPaola*, 399 F.3d 403, 410 (1st Cir. 2005). Rather, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995).

In ruling on a motion brought under Fed. R. Civ. P. 12(b)(1), the court must credit the plaintiff's well-pleaded factual allegations and draw all reasonable inferences in its favor. *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). The court may also consider other evidence, including depositions and exhibits submitted by either party. *Id.*

### B. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st

Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

### III.     Analysis

#### A.     Subject-Matter Jurisdiction

Defendants first argue that the Court lacks subject-matter jurisdiction to entertain plaintiff's claims. Specifically, defendants contend that plaintiff has not exhausted its administrative remedies, and that § 405(h) explicitly bars this Court from hearing this action.

Plaintiff's case is "at bottom, nothing more than an argument that it was entitled to payments under the Medicare program, those payments were delayed or denied, and [plaintiff] suffered damages as a result." *See Nichole Medical Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 349 (3rd Cir. 2012). Accordingly, the case clearly "arises under" the Medicare Act, and is subject to § 405(h). *Cf. Shalala v. Illinois Council of Long Term Care, Inc.*, 529 U.S. 1 (2000). This action is thus exactly the type that Congress intended to channel through the agency's administrative process. *See, e.g., Puerto Rican Assoc. of Physical Medicine and*

*Rehab., Inc. v. United States*, 521 F.3d 46, 48 (1st Cir. 2008).

Plaintiff appears to concede that it has not exhausted its administrative remedies. However, it asks this Court to allow it to bypass the administrative process because exhaustion would be futile or inadequate. In support of this contention, it cites to a number of cases concerning claims under the Individuals with Disabilities Education Act, in which courts have excused a plaintiff's failure to exhaust administrative remedies when such remedies would be futile or inadequate, would waste resources, or would work severe or irreparable harm on the litigant. (Pl. Br. at 12). Plaintiff contends that the circumstances in this case warrant a similar exception.

The futility exception—assuming it exists—is inapplicable to the facts of this case. Plaintiff does not cite to any case in which a court has found the administrative process to be futile in a challenge to a denial of Medicare payments. Nor has plaintiff set forth any support for the suggestion that the administrative appeals process set out by statute and regulation would be futile or inadequate in this case. Indeed, because Safeguard has already formally denied many of plaintiff's claims, it could commence the administrative appeals process immediately. There is nothing on the face of the complaint, or in the pleadings, that suggests such an appeal would be pointless. At best, plaintiff seems to suggest that the administrative route would take longer, or would be unlikely to succeed. Without more, the mere likelihood that the administrative process will add delay, or result in affirmance of the initial decision denying payment, does not make it futile. *See, e.g.*, *St. Elizabeth's Med. Ctr. of Boston, Inc. v. Shalala*, 91 F. Supp. 2d 419, 422 (D. Mass. 2000). Where Congress has so clearly proscribed immediate judicial review of an agency's decision, the Court will not depart lightly from the Congressionally-determined review

process.

Nor does plaintiff's case fit into the "narrow exception to the exhaustion rule" where an agency has waived exhaustion. *Doyle v. Secretary of Health & Human Services*, 848 F.2d 296, 299 (1st Cir. 1988). This exception applies only when a plaintiff raises "a claim that [is] wholly collateral to his claim for benefits," and makes a "colorable showing that his injury [cannot] be remedied by the retroactive payment of benefits after exhaustion of his administrative remedies." *Heckler v. Ringer*, 466 U.S. 602, 618 (1984). Plaintiff's claim here is not wholly collateral to its claim for benefits; indeed, it essentially claims that it is entitled to continued payment. Nor has it presented any indication that the agency could not remedy its injury by reversing the denials and paying the owed benefits, if the initial denial proved to be incorrect.

Plaintiff's claim arises out of the Medicare Act, and is circumscribed by the procedures and remedies provided for in that statute. The regulations promulgated under the Medicare Act make clear that a decision to suspend payments temporarily is not reviewable. Plaintiff's sole recourse lies in the administrative appeal procedure set forth by the statute. It has not fulfilled the statutory requirement of exhausting administrative remedies prior to filing a complaint, and the Court therefore has no subject-matter jurisdiction over this case. Accordingly, defendant's motion to dismiss for lack of subject-matter jurisdiction will be granted. The Court need not consider defendant's argument that the complaint also fails to state a claim upon which relief can be granted.

### B. <u>Injunctive Relief</u>

Because the Court does not have jurisdiction over this case, it will not—and indeed

cannot—provide plaintiff with injunctive relief. Accordingly, plaintiff's motion for injunctive relief will be denied.

## IV.    Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED, and plaintiff's motion for injunctive relief is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: May 9, 2013